UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RYAN DOWNS, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) Civil Action No.: 1:19-cv-882 |
| v. | ) |
| | ) |
| RUSSELL HOTT, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**PETITIONERS' REPLY MEMO IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER**

Petitioners, three civil immigration detainees confined to disciplinary segregation at the ICA-Farmville detention center in retaliation for their protected expressive activities, filed a Petition for Writ of Habeas Corpus [Dkt. #1] and a Motion for Temporary Restraining Order [Dkt. #2]. In response, Respondent Crawford provided evidence [Dkt. ##6-1, 6-2, 6-3] confirming that the disciplinary hearings lacked some of the (admittedly minimal) due process protections required under the U.S. Constitution and Fourth Circuit caselaw. For the following reasons, the Motion should be granted, and a Temporary Restraining Order entered requiring that Petitioners Downs and de la Cruz be released from disciplinary segregation.[1] In support of this request, Petitioners respectfully represent as follows:

---

[1] In reliance on Respondent Hott's representation that Petitioner Castillo Canales was to be released from the detention center on July 5, *see* Dkt. #8 at p.8, he does not join in this brief, but reserves the right to revive his request for a TRO should there be any delay in his release date, thus prolonging his time in segregation. Petitioner Castillo Canales notes that the record reflects that he requested a staff representative present to assist him at his disciplinary hearing—a key due process protection—but was given only a translator. *See* Dkt. #6-4 at pp.4-5. As the Court is well aware from direct experience, the job of a translator is to faithfully interpret; one cannot simultaneously translate and represent. Accordingly, the record reflects that Petitioner Castillo

1

I. **Habeas corpus is available to challenge confinement in disciplinary segregation, and Defendant Hott is the proper Respondent for a habeas petition.**

The Fourth Circuit has held that "there is federal habeas corpus jurisdiction over the complaint of a federal prisoner who is challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause." *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975). The Fourth Circuit has distinguished between claims concerning due process or just cause, which are cognizable in habeas proceedings, and claims concerning the conditions of confinement, which are not. *Varela v. Whalen*, 946 F.2d 888, 1991 WL 213515, at *1 (4th Cir. Oct. 23, 1991) (citing *McNair*).

As the federal officer with supervisory authority over the ICA-Farmville detention center, Russell Hott is the proper respondent for a habeas corpus petition:

> Where a petitioner is held in a facility solely pursuant to a contract, rather than by the state or federal government itself, application of the immediate custodian rule must take account of that fact. Instead of naming the individual in charge of the contract facility—who may be a county official or an employee of a private nonprofit organization—a petitioner held in federal detention in a non-federal facility pursuant to a contract should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ.

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017), *aff'd*, 905 F.3d 1137 (9th Cir. 2018). *See also Jarpa v. Mumford*, 211 F. Supp. 3d 706, 724 (D. Md. 2016) (collecting cases finding the proper respondents for immigrants detained by ICE in contract facilities to be the relevant federal officials, not wardens in the employ of the contract facility). A review of this court's docket will show dozens of habeas corpus petitions filed by immigration detainees at

---

Canales was effectively denied his request for the assistance of a staff representative, a key due process protection.

ICA-Farmville naming ICE Field Office Director Russell Hott as the Respondent. *See, e.g.*, *Diaz v. Hott*, 297 F. Supp. 3d 618, 620 (E.D. Va. 2018) (granting writ of habeas corpus).

The government's argument that Respondent Hott is not directly or vicariously liable for the actions of ICA-Farmville employees, *see* Dkt. #8 at pp.10-15, thus entirely misses the point. This action is not presently a suit for damages based on past constitutional violations, it is a habeas corpus petition and complaint seeking the forward-looking injunctive relief of release from disciplinary segregation. On their Motion for TRO, Petitioners do not seek to hold Director Hott <u>liable</u> for any actions or inactions; he is presently named in this case only as a habeas respondent. And appropriately so, as the government admits that he has the power to order the relief requested by Petitioners, namely removal from disciplinary segregation and return to their original dorms, *see* Exh. 8-1. Respondent Hott's request to be dismissed from this case should be denied.

**II.     Accusations of "sandbagging" are inaccurate and unhelpful.**

Both Respondents Hott and Crawford accuse Petitioners of "sandbagging" because Petitioners' declarations were signed on Friday, June 28 and this action was filed at 8:49am on Wednesday, July 3, the day before a federal holiday. Petitioners' counsel prepared a 21-page habeas petition and a 23-page TRO motion in just two business days—hardly evidence of a "delay tactic."

Immediately upon filing the initial papers, Petitioners' counsel contacted Assistant U.S. Attorney Dennis Barghaan and inquired if he was available for a call at 10:30am, to which he responded, "I doubt it. . . . I will let you know when I am available." An hour later, Petitioners' counsel received a Notice of Docket Correction stating, "a Notice of Hearing Date that sets the motion **for a Friday docket** also needs to be filed. Your motion will not be ruled on until you

3

have filed a Notice of Hearing Date setting the motion for an appropriate **Friday docket**[.]" (Emphasis added.) As requested by the clerk, Petitioners noticed the hearing for the next available Friday docket, but not before again e-mailing the U.S. Attorney's Office to try to discuss the matter and again receiving no substantive response.

Petitioners' counsel have litigated with the U.S. Attorney's Office on many immigration-related cases in good faith and with a high degree of collegiality,[2] and inflammatory accusations of unprofessional or sharp-elbowed tactics—aside from being inaccurate—are neither appropriate among colleagues nor helpful to the resolution of the instant motion.

### III. Civil immigration detainees in private detention centers are entitled to constitutional due process in disciplinary hearings.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). A civil detainee's challenge to conditions of confinement arises under the Due Process Clause of the Fifth Amendment to the United States Constitution. *Hicks v. James*, 255 F. App'x 744, 748 (4th Cir. Nov. 28, 2007). The Fifth Amendment generally prohibits civilly committed persons from being subjected to punitive confinement conditions. *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). Due process requires that a pretrial detainee not be punished prior to a lawful conviction. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Even

---

[2] *See Ruiz v. United States of America*, 1:14-cv-01246-GBL-JFA; *Beltran v. Poston*, 1:15-cv-00745-JCC-JFA; *Legal Aid Justice Center v. U.S. Immigration and Customs Enforcement*, 1:15-cv-01316-JCC-TCB; *Aziz v. Trump*, 1:17-cv-00116-LMB-TCB; *Romero v. Evans*, 1:17-cv-00754-LMB-JFA; *Tun-Cos v. Perrotte*, 1:17-cv-00943-AJT-TCB; *Vega Reyna v. Hott*, 1:17-cv-01192-LO-TCB; *Park v. Sessions*, 1:17-cv-01332-AJT-IDD; *Diaz v. Hott*, 1:17-cv-01405-LMB-MSN; *O.D.T.M. v. Lloyd*, 1:18-cv-00524-TSE-MSN; *Sanchez-Acosta v. Sessions*, 1:18-cv-00872-LO-IDD; *J.E.C.M. v. Lloyd*, 1:18-cv-00903-LMB-MSN; *Ventura Cruz v. Hott*, 1:19-cv-00887.

convicted prisoners are entitled to a fair and impartial decision-maker at disciplinary hearings. *Edwards v. Balisok*, 520 U.S. 641, 647 (1997).

Here, ICE contracts with the Town of Farmville, Virginia, which in turn contracts with the ICA-Farmville detention center. *See* Dkt. #1-1. Employees and officers of ICA-Farmville such as Respondent Crawford are therefore state actors and liable for suit under 42 U.S.C. § 1983, *see Richardson v. McKnight*, 521 U.S. 399 (1997), independently of whether they may also be considered federal actors since they are engaging in the core federal function of civil immigration detention. Petitioners enjoy the constitutional right to due process, including procedural protections in inmate disciplinary proceedings as set forth in Petitioners' Motion for TRO [Dkt. #2] and below.

IV. **The evidence submitted by Respondent Crawford shows that the disciplinary hearings of Petitioners Downs and de la Cruz lacked key due process protections mandated by the Supreme Court and the Fourth Circuit.[3]**

In response to Petitioners' declarations stating facts that they personally observed, *see* Dkt. ##2-1, 2-2, 2-3, Respondent provided the court with a declaration from Respondent Crawford that is rife with hearsay lacking in indicia of reliability,[4] *see* Dkt. #6-1. For example, while Petitioner Downs states that he was not a ringleader of the "food strike" and that the

---

[3] Petitioners Downs and de la Cruz also maintain that they were violently removed from their dorms and placed in disciplinary proceedings as retaliation for protected expressive activity. (Motion for TRO, ECF No. 2 at 14–21) . Respondents dispute this and state that Petitioners' disciplinary charges relate to the Petitioners acting too slowly in obeying orders from guards during a use-of-force event and allegedly threatening to disturb order at the Detention Center. (*See* Crawford's Brief, ECF No. 6). This factual dispute will require discovery to resolve, and Petitioners therefore do not press their First Amendment retaliation claim on this Motion for a TRO.

[4] The portion of Respondent Crawford's Declaration which identifies Petitioner Downs as a supposed ringleader of the food strike is entirely without attribution. *See* Dkt. #6-1 at ¶ 4 ( "I received a report of information from an informant inside the ICAF facility . . . . my staff and I collected information . . . . More information came to light . . ."). Respondent Crawford admits that Petitioner de la Cruz was never considered a ringleader.

5

detainees' activity was entirely peaceful (*See* Downs Decl., Dkt. #1-6 at ¶¶9–10), Respondent Crawford states that Mr. Downs was a ringleader and sought to force others to participate, and that the detainees were planning an outdoor recreation yard disturbance (*See* Crawford Decl., Dkt #6-1 at ¶¶4–5). To the extent that the Court finds any factual disputes raised by Respondent Crawford's declaration to be dispositive, such disputes can only be resolved through the in-court testimony of Petitioners and Respondent Crawford. *See, e.g.*, *Indus. Elecs. Corp. v. Cline*, 330 F.2d 480, 483 (3d Cir. 1964) ("[W]here the affidavits relate to controverted factual issues the court is not required to receive them in lieu of oral testimony. The court should insist . . . on the presentation of oral testimony which may be subjected to the test of cross-examination." (Internal citations omitted.))

Respondent's own records of the disciplinary proceedings of Petitioners Downs and de la Cruz, however, demonstrate that those hearings lacked some of the key due process protections required by the Fourth Circuit, to wit:

**A. Petitioner Ryan Downs**

   **1. Respondents denied Petitioner Downs due process at his disciplinary hearing by denying him a meaningful opportunity to call witnesses in his defense.**

A pretrial detainee facing a disciplinary hearing has a constitutional right to call witnesses in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).[5] The right to present the testimony of witnesses is especially important in a case like Downs's where the disciplinary proceedings involve an altercation between a detainee and a guard, because accused detainees

---

[5] To be sure, a detainee's right to call witnesses is not absolute; prison officials can limit the calling of witnesses in cases where it would be unduly hazardous to institutional safety or correctional goals. But the burden is on the Detention Center to make that showing, *see Ponte v. Real*, 471 U.S. 491, 497 (1985), and the Respondents did not raise any such concerns in response to Petitioner Downs's proposed witness list.

"obviously face[] a severe credibility problem when trying to disprove the charges of a prison guard." *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977), quoting *Wolff*, 418 U.S. at 583 (Marshall, J., dissenting).

Here, Respondents did not give Petitioner Downs a meaningful opportunity to call witnesses in his defense. Before the hearing, Downs submitted a list of three detainees he wanted to call as witnesses. (ECF No. 6-2 at 7). Downs did not know all of the detainees' names, so he used their bunk numbers. (Downs Decl., ECF No. 1-6 at ¶30). None of the witnesses appeared at the hearing. Respondent Crawford explains that one detainee didn't want to testify, and that the other two bunk locations that Downs listed to identify his witnesses were "found empty." (ECF No. 6 at 5). However, it appears that the reason that at least one of these bunks was "found empty" is that Respondents had transferred the witnesses to another dormitory within the same facility and given them a new bunk number. (Downs Decl., ECF No. 1-6 at ¶31). Respondents claim that they were unable to find Downs's witness because of the change in dormitory and bunk number. (*Id.*). Given how strictly Detention Center officials keep track of their detainees, however, this explanation strains credibility. And even if it were true, Respondents could have taken Downs to the witness's new dormitory or to a common area of the Detention Center so that Downs could identify the witness by sight. Instead, Respondents did nothing. Their inaction deprived Downs of the opportunity to present this witness in his defense—a core due-process right.[6] As a result, Downs's hearing did not meet the minimum requirements of due process, and the Court should grant his motion for a TRO.

---

[6] *Accord, Brooks v. Dunlap*, No. 618CV00632MBSKFM, 2019 WL 1146687, at *9 (D.S.C. Mar. 13, 2019). In *Brooks,* a prisoner brought a Section 1983 claim against the prison warden for, among other things, failing to produce one of the prisoner's requested witnesses at a disciplinary hearing. The court denied the warden's motion for summary judgment, finding that there was a factual dispute as to whether the warden failed to produce the witness on the basis of a legitimate

7

**2. After the disciplinary hearing, Respondents did not give Petitioner Downs a written statement of the factual findings and reasons underlying their sentencing decision.**

The Supreme Court and the Fourth Circuit agree: due process requires that after a pretrial detainee's disciplinary hearing, the detainee must be given a written statement describing the evidence relied on and the reasons for any disciplinary action taken. *Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016); *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).

Respondents' own evidence shows that Downs was not given the constitutionally-required statement. For example, the Record of Proceedings in Downs's case includes a checklist signed by the president of the Discipline Hearing Board. (ECF No. 6-2 at 4). The checklist appears intended to document the Board's compliance with the procedures mandated by ICE's National Detention Standards and by the Constitution. It contains 13 items, each phrased as a yes-or-no question, and each item is followed by three options: YES, NO, or N/A. At Item #12, the checklist asks "Accused informed of the findings and recommendations?" And the option circled after Item #12 is "NO." By contrast, the checklist in Petitioner De la Cruz's case file has Item #12 marked as "YES." (ECF No. 6-3 at 5). And sure enough, De la Cruz's file contains a written statement from Respondent Crawford, stating that the document is being provided to De la Cruz for the express purpose of giving him written notice of Respondent Crawford's decision

---

penological interest or safety concern (which would constitute a proper exercise of discretion) or whether the denial of the prisoner's witness request was arbitrary (which would violate due process under *Wolff*). Here, the Detention Center does not contend that its failure to produce Petitioner Downs's requested witness was because of a legitimate penological interest or safety concern—Respondent Crawford simply says that Detention Center officials went to the witness's bunks, found them empty, and then stopped looking. Thus, Respondents' denial of Petitioner Downs's witness request was arbitrary and violated due process.

and the reasons for it. (*See* ECF No. 6-3 at 3).[7] Petitioner Downs's case file contains no such statement. (*See* ECF No. 6-2).[8] Thus, it is highly likely that Respondents' checklist is correct, and that Downs was never informed in writing of the Discipline Hearing Board's findings in his case or the reasons underlying its decision. Because such a written statement is an essential component of due process, then, the Court should grant the TRO and order Downs's release from disciplinary segregation.

Respondents' failure to provide Petitioner Downs with a written statement of findings and reasons is far from a harmless technicality; as the Supreme Court has explained, it is an essential component of due process. As the *Wolff* Court explained, disciplinary proceedings are serious matters. If a detainee is found guilty of a disciplinary infraction, it can result in punitive detention, harm the detainee's chances to receive conditional release (or impact the terms of such release), or lead to the detainee's being transferred to a high-security facility. *See* 418 U.S. at 565; *see also* Petition for Habeas Corpus, ECF No. 1 at ¶¶99–107 (listing the ongoing consequences for Petitioners in this case even past their eventual release from disciplinary segregation). Written statements, the Supreme Court has held, allow a detainee's disciplinary

---

[7] Petitioners do not concede that the statement of reasons given to Petitioner De la Cruz satisfies the requirements of *Wolff* and *Dilworth*; they note only that Petitioner Downs did not receive even this inadequate statement.

[8] Downs's file does contain a "Discipline Hearing Board Summary of Findings" (ICA Form 46) that purports to provide a summary of Downs's proceedings, a summary of the Board's findings, and the reasons for the recommended disciplinary action. (ECF No. 6-2 at 3). There are clear reasons to doubt the reliability of this form. For example, the statement of "findings" is one sentence long and says only that "[t]he subjects actions were caught close up and first hand on video and audio recording," but makes no findings of what Downs's supposedly culpable "actions" were. In any case, even if this form were sufficient to satisfy the written-statement requirement of *Wolff* and *Dilworth* (a point that Petitioners by no means concede), there is no evidence that Downs was ever given a copy.

9

proceedings to receive meaningful administrative or judicial review, along with other important safeguards. *Wolff*, 418 U.S. at 565. As the *Wolff* Court explained:

> Written records of proceedings…protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

*Id.*

Respondents' statements in this case show exactly why the *Wolff* Court's rationale is correct. In his papers, Respondent Crawford tries to characterize Petitioner Downs as a "suspected instigator" of an (unspecified) threatened "major disturbance involving 400 detainees" during the detainees' outdoor recreation time. (Crawford Brief, ECF No. 6 at 3; Crawford Decl., ECF No. 6-1 at ¶4). And it is now the official position of U.S. Immigration and Customs Enforcement that Downs was forcing other detainees to participate in the collective "meal strike" by using threats. (Hott Brief, ECF No. 8 at 4). The administrative record, however, is wholly devoid of any such allegations. Rather, the investigator's report says that Downs was being disciplined only for (1) refusal to obey an officer's order to get off his bunk, stand up, and be restrained and (2) using foul language toward an officer. (ECF No. 6-2 at 8–9).[9] The Summary of Findings says nothing about Downs organizing a rec-time disturbance or intimidating detainees into participating in the meal strike by force; it says only that "[t]he subjects actions were caught close up and first hand on video and audio recording." (ECF No. 6-

---

[9] The investigator's report cannot serve as the "written statement" required by *Wolff*. *King v. Wells,* 760 F.2d 89, 93–94 (6th Cir. 1985); *Chavis v. Rowe*, 643 F.2d 1281, 1286–87 (7th Cir. 1981),

2 at 3). It does not specify what "actions" were recorded, and it certainly does not mention Downs's supposed encouragement of disturbances or threats. (*See id.*). Indeed, the record is far more consistent with Downs's version of events: when he asked at the hearing what "disorderly" conduct he was accused of, the hearing officer told him that it was *the guard's unnecessary pepper-spraying of Downs* that disrupted the other detainees. (Downs Decl., ECF No. 1-6 at ¶93).

In the end, Respondents' post-hoc justification for their actions has no support in the record.[10] Defendants simply did not punish Ryan Downs for plotting a major disturbance at rec-time, or for forcing detainees to participate in a "meal strike." This is precisely why the Supreme Court requires written statements as a fundamental component of due process: to "protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding." *Wolff*, 418 U.S. at 565.

\* \* \*

In the end, Respondents are punishing Petitioner Downs after denying him (1) a meaningful attempt to present witnesses, (2) a chance to view or confront the evidence against

---

[10] In his brief, Respondent Crawford indicates that his accusations against Downs were based in part on statements by an unnamed detainee informant. (ECF No. 6 at 3). If Respondents attempt to use a post-hoc justification that they relied on this informant's testimony in their decision-making as to whether and how severely to punish Downs, the Court should reject that justification. As the *Wolff* court held, "It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence," such as the testimony of informants, "but in that event the [mandatory post-hearing] statement should indicate the fact of the omission." 418 U.S. at 565. *See also Kyle v. Hanberry*, 677 F.2d 1386, 1390–91 (11th Cir. 1982) (where a disciplinary committee's determination is based upon hearsay information derived from an unidentified informant, minimum due process mandates that the committee undertake in good faith to establish the informant's reliability…There must be some information on the record from which a tribunal can reasonably conclude that the committee undertook such an inquiry and, upon such inquiry, concluded that the informant was reliable.)

him, or (3) a written statement of the findings and reasons underlying their decision to sentence him to 30 days in "the hole." These actions denied Downs due process, and his disciplinary conviction must be overturned. *See Brown v. Johnson*, No. CIV. A. 7:07CV00396, 2007 WL 4269234, at *8 (W.D. Va. Nov. 30, 2007) ("[I]f Brown could prove his allegations that he was not allowed to present witnesses, not allowed to confront witnesses against him, not allowed to review or present documentary evidence, and that the presiding board failed to give reasons for finding Brown guilty, such proof would necessarily invalidate the disciplinary conviction.*"*

### B. Petitioner David de la Cruz

#### 1. De la Cruz was wrongfully denied the right to present witnesses or review the videotape of the incident at his disciplinary hearing.

As with Petitioner Downs, Respondents also denied Petitioner De la Cruz the due-process right to present witnesses at his disciplinary hearing. At his hearing, De la Cruz asked to call two witnesses: Officer Garcia (a Detention Center guard) and a fellow detainee. (*See* Petition, ECF No. 1 at ¶¶ 41–42, 69–70). During the raid on Dorm 4, De la Cruz had asked Officer Garcia to tell the English-speaking guards that he (De la Cruz) was injured and could not readily comply with the officers' commands. (*See id.*) The fellow detainee knew about De la Cruz's injury and could testify as to its nature—De la Cruz had very recently sprained his ankle, limiting his movements. (*See id.*). But the hearing officer ignored his request to call Officer Garcia, and officers told him that he was not allowed to call incarcerated witnesses. (*Id.* at ¶¶69–70). In the Summary of Findings, the Discipline Hearing Board admits that De la Cruz asked to call witnesses. But the Board denied the request because it had already made up its mind—after all, [t]he event occurred in full view of a video camera." Thus, the Board decided that the testimony of De la Cruz's witnesses would be irrelevant.

12

The Board was wrong. De la Cruz does not dispute that he failed to obey the officer's order as shown in the video. (*See* ECF No. 6-3 at 4, summarizing De la Cruz's hearing testimony.) But the testimony of his witnesses would have corroborated a piece of critically-important information: *why* he failed to comply. De la Cruz did not disobey the order out of malice; he did it because he was injured and *couldn't* comply fast enough for the guard's satisfaction. (*See id.*). De la Cruz's injury might not have been apparent from a videotape, making testimony from his witnesses extremely relevant on this point.[11] For this reason, Respondents' refusal to let him present the testimony of his witnesses was an unconstitutional denial of due process.

### 2. Respondents did not give Petitioner De la Cruz due process before unilaterally increasing his sentence from 7 days of disciplinary segregation to 30 days.

Following De la Cruz's disciplinary hearing, the Board sentenced him to seven days in disciplinary segregation, with the possibility that he would receive credit for time already served in administrative segregation. ECF No. 1 at ¶71. Later, De la Cruz received a memorandum from Respondent Crawford, stating that he was unilaterally increasing De la Cruz's sentence from 7 days of segregation to 30. ECF No. 6-3 at 3.

This unilateral action violated De la Cruz's right to due process. Respondent Crawford's memorandum purports to state "the reasons for [his] decision," but the document falls far short of the Constitution's requirements on that score. The letter states that De la Cruz "engaged in conduct that severely disrupted the security and orderly running of this institution, during a

---

[11] De la Cruz asked at the hearing to view the videotape evidence against him, but his request was denied. (Petition, ECF No. 1 at ¶71). In *Dilworth*, the Fourth Circuit took a dim view of prison officials' refusal to provide a disciplined detainee with the video evidence against him, 841 F.3d 246, 249–50, and Respondents' failure to do so here is further evidence of their failure to comply with due process.

calculated use of force incident". ECF No. 6-3 at 3. "Such an incident," the letter continues, "could lead to tremendous injury and possible loss of life. Incidents like these, and behavior such as what you exhibited, warrant the stiffest penalties and ramifications." *Id.*

Let us remember what De la Cruz was actually charged with: failing to get off his bunk fast enough for an armed guard's satisfaction due to a bum ankle, and getting a "disruptive" face-full of pepper spray for his trouble. A detainee's failure to get off his bunk due to injury surely could not lead to "possible loss of life" or "tremendous injury"—the only one injured was De la Cruz. Nothing in the record of proceedings indicates that there was any danger posed by the injured De la Cruz or that there was any meaningful risk of the dire consequences suggested by Respondent Crawford's letter. The letter failed to afford the kind of meaningful written statement that the Supreme Court has insisted upon in *Wolff,* and Respondents gave De la Cruz no opportunity to be heard before unilaterally quadrupling his disciplinary sentence. Thus, Respondents denied De la Cruz due process, and this motion for a TRO should be granted.

## Conclusion

Civil detainees enjoy precious few due process protections in disciplinary proceedings, but for that reason, those protections recognized the Fourth Circuit must be zealously guarded. Respondent Crawford attempted to defeat Petitioners' TRO motion by providing the disciplinary hearing records, but those very records show the hearings lacked required due process protections. For the foregoing reasons, Petitioners Downs and de la Cruz request that their Motion for TRO be granted, and that they be ordered released from disciplinary segregation and returned to their dorms.

Respectfully submitted,

/s/ Nicholas Cooper Marritz                                                            July 7, 2019
Nicholas Cooper Marritz (VSB No. 89795)
Hallie Ryan (VSB No. 85927)
Simon Sandoval-Moshenberg (VSB No. 77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RYAN DOWNS, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) Civil Action No.: 1:19-cv-882 |
| v. | ) |
| | ) |
| RUSSELL HOTT, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**Certificate of Service**

I hereby certify that on July 7, 2019, I uploaded the foregoing document to the Court's CM/ECF system, which will send notice of the filing and a link to the document to all counsel of record.

/s/ Nicholas Cooper Marritz                                                July 7, 2019
Nicholas Cooper Marritz (VSB No. 89795)
Hallie Ryan (VSB No. 85927)
Simon Sandoval-Moshenberg (VSB No. 77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org